IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN ESNAYRA | * |
| Plaintiff | * |
| vs. | *    Case No.: 1:05CV01501 |
| GEORGE WASHINGTON UNIVERSITY HOSPITAL, *et al.* | *    Judge: Colleen Kollar-Kotelly |
|  | *    Deck Type: Personal Injury/ Malpractice |
| Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND MOTION TO COMPEL PSYCHIATRIC RECORDS IN ACCORDANCE WITH QUALIFIED PROTECTIVE ORDER

Defendant District Hospital Partners, LP t/a the George Washington University Hospital, by its attorneys, Thomas V. Monahan, Jr., Adam Kelley and Goodell, DeVries, Leech & Dann, LLP, hereby opposes Plaintiff's Motion for Protective Order and moves for a Motion to Compel Production of Psychiatric Records in Accordance with a Qualified Protective Order, and as grounds therefor states as follows:

#### PROCEDURAL HISTORY

This action arises from events that occurred at George Washington University Hospital on August 1, 2004, when Plaintiff Joan Esnayra presented to the emergency room with complaints of severe back pain. Plaintiff alleges in her Complaint that while she was in the emergency room, she was physically, verbally and chemically assaulted by persons whom she cannot name, but whom she believes to have been employees of Defendant District Hospital Partners and/or Defendant Medical Faculty Associates, Inc. See generally Plaintiff's Complaint.

Plaintiff also alleges in her Complaint that the Defendants violated her civil rights be refusing to allow her to bring her psychiatric "service dog" into the emergency room. Id. at ¶ 30. Further, she alleges that the administration of certain medications to Plaintiff in the emergency room on August 1, 2004 was contraindicated because of Plaintiff's use of medications that she takes to treat bipolar disorder. See Plaintiff's Motion for Protective Order at p. 2.

As part of the discovery process, Defendant subpoenaed medical records from Plaintiff's treating psychiatrist, Dr. Richard Davis Greenberg, on October 14, 2005. A copy of the subpoena issued to Dr. Davis is attached as Exhibit 1. On November 3, 2005, Plaintiff filed her Motion for Protective Order, in which she asserts that her psychiatric records are irrelevant to this case and their disclosure to Defendant would cause her unnecessary embarrassment. Plaintiff's Motion for Protective Order includes a "Memorandum of Points and Authorities" that contains absolutely no citations to any case law or statute that would justify the relief she seeks.

## ARGUMENT

### I. Defendant Is Entitled To Review Plaintiff's Psychiatric Records Pursuant To HIPAA

The Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.512(e) et seq., provides that a patient's medical records, including psychiatric records, may be disclosed pursuant to subpoena "in the course of any judicial or administrative proceeding," id., as well as "in response to an Order of a Court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such Order." 45 C.F.R. § 164.512(e)(1)(i). In addition, 45 C.F.R. § 164.512(e)(1)(iv)(D) provides that a covered entity may disclose protected health information in response to a subpoena, discovery request or other lawful process that is not accompanied by an Order of a Court if the parties seeking the protected health information have requested a Qualified Protective Order.

The subpoena issued to Dr. Greenberg by Defendant was in full compliance with all of the applicable HIPAA requirements. See Exhibit 1. Indeed, Plaintiff's Motion for Protective Order does not suggest otherwise. Nevertheless, in an abundance of caution to protect those of Plaintiff's rights that she has not waived by commencing this litigation and placing her mental status at issue, Defendant believes that it would be appropriate for the Court to enter a Qualified Protective Order pursuant to 45 C.F.R. § 164.512(e)(1)(v). Such an order "(A) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) requires the return to the covered entity or destruction of the protected health information, including all copies made, at the end of the litigation or proceeding." Id.

## II. Plaintiff's Psychiatric History Is Squarely At Issue In This Case

This Court has previously recognize in dicta that when a plaintiff places her mental condition at issue in litigation, production of her psychiatric records in accordance with HIPAA is appropriate. Kalinoski v. Evans, 377 F. Supp. 2d 136, 139 (D.D.C. 2005). Plaintiff's psychiatric condition before, on and after August 1, 2004 is squarely at issue in this case for many reasons. Plaintiff's contention in her Motion for Protective Order that her psychiatric history is irrelevant to this case is, at best, disingenuous.

The medical records from Plaintiff's August 1, 2004 visit to George Washington University Hospital contain absolutely nothing that supports her allegations of outrageous conduct on the part of the Defendants. As discussed below, Plaintiff has a long history of psychiatric problems, including bipolar disorder and Post Traumatic Stress Disorder. She has a history of depressive episodes, paranoia and nightmares. Defendant absolutely has a right to explore the extent to which Plaintiff's allegations spring from her own mind, and not from the

reality of the events of August 1, 2004. Given that there is nothing in the medical records that would support Plaintiff's allegations, this case will likely devolve into a he-said-she-said situation in which Plaintiff claims that something absolutely did happen on August 1, 2004, and Defendant claims that that same thing absolutely did not happen. Defendant would be severely prejudiced if it were not given the opportunity to discover whether Plaintiff had any history of psychosis or paranoia prior to or after August 1, 2004 that could explain why her recitation of events is so different from the facts as recorded in the contemporaneous medical notes.

Defendant is also entitled to know exactly what Plaintiff told Dr. Greenberg – and any other health care provider – about the events of August 1, 2004. In the event that Dr. Greenberg's notes do not contain any reference to the alleged events, that would certainly be further evidence that the alleged events did not, in fact occur at all. To the extent that Plaintiff's medical records would tend to support any of Defendant's anticipated defenses, Defendant absolutely would be prejudiced if it were denied the opportunity to have those records reviewed by an expert in psychiatry.

Further, Plaintiff's express allegations in her Complaint and her Motion for Protective order make clear that her psychiatric history is very much at issue. She claims, inter alia, that her civil rights were violated when Defendant did not allow her "psychiatric service dog" to accompany her into the ER. See Complaint at ¶ 30. She claims that Defendant violated the standard of care by administering medications that were contraindicated due to her use of unnamed psychiatric medications. See Motion for Protective Order. She claims that she was traumatized by the events of August 1, 2004 and that the events caused her such extreme pain and suffering that she deserves to be awarded punitive damages. See generally Complaint. All of those allegations bear directly upon her psychiatric condition before, on, and after August 1,

4

2004. It is imperative that Defendant be permitted to view the requested records to evaluate the validity of Plaintiff's allegations and claimed damages.

### III. Plaintiff Has Already Placed Her Psychiatric History In The Public Domain

While Plaintiff argues in her Motion for Protective Order that disclosure of her psychiatric records to Defendant would cause her "unnecessary embarrassment," it is clear from Plaintiff's prior actions that she is not embarrassed about her considerable history of psychiatric problems. A "Google" search on the internet revealed a plethora of articles authored by Plaintiff in which she candidly discusses her psychiatric history, as well as interviews with Plaintiff in which she discussed her psychiatric history. For example, an article sponsored by the Minority Scientists Network interviewed Plaintiff about her history of mental illness. In the article, which is attached hereto as Exhibit 2, Plaintiff discusses her history of "drastic and uncharacteristic behaviors." See Exhibit 2. The article further discusses how "Esnayra's condition deteriorated with depressive episodes and PTSD symptoms such as paranoia and nightmares." Id.

Another article that appears on the Minority Scientists Network website was authored by Plaintiff herself. Based on the confessions made in the article, which is available for viewing on the internet by anybody in the entire world who has access to a computer, Plaintiff's assertion that she would suffer "unnecessary embarrassment" if her psychiatric records were produced to Defendant, who is bound by federal and state to keep said records confidential, simply is not credible. Plaintiff's self-authored article includes discussion of her three arrests, her father's "drunken rages and beatings," her mother's "kleptomania and suicide attempts," Plaintiff's "countless childhood rapes," her hospitalizations for "major depression," her diagnosis of bipolar disorder, and her own history of attempted suicide. A copy of this article is attached hereto as

5

Exhibit 3. Clearly, fear of embarrassment cannot be the reason Plaintiff seeks to prevent Defendant from obtaining the psychiatric records from Dr. Greenberg.

Another website for an organization called PAWS (which stands for "Pets Are Wonderful Support") lists Plaintiff as the President of the Psychiatric Service Dog Society. Plaintiff's biography on that website states: "Dr. Esnayra lives openly with severe bipolar disorder and Post Traumatic Stress Disorder." See Exhibit 4.

### IV.   Defendant Is Entitled To Explore The Extent To Which Plaintiff's Claims May Be A Function Of Her Well-Documented Mental Illnesses And Psychiatric Problems

Dr. Mark Komrad, a board-certified psychiatrist in private practice in Maryland, has stated that there are four possible explanations for the vast divergence between Plaintiff's claims and the actual content of the medical records from her August 1, 2004 visit to George Washington University Hospital: (1) Plaintiff's claims could be true, in which case there would have to have been a vast conspiracy to by Defendants to "cover up" the events of August 1, 2004 (since it is alleged that five different John Does attacked her in concert); (2) Plaintiff had a psychotic episode on August 1, 2004; (3) Plaintiff had a dissociative episode on August 1, 2004; and (4) Plaintiff is malingering in the hopes of financial or other gain. Because Plaintiff suffers from both bipolar disorder and post traumatic stress disorder, options (2) and (3) are more than mere theoretical possibilities.

As Dr. Komrad has explained in his Affidavit in support of this Motion, which is attached hereto as Exhibit 5, the issues in this case simply cannot be parsed without reviewing Plaintiff's psychiatric records. Without reviewing Plaintiff's psychiatric records from the time period before and after August 1, 2004, Defendant cannot make a multitude of crucial determinations relevant to Plaintiff's standard of care, causation and damages claims, including whether Plaintiff suffered a psychotic episode on August 1, 2004; whether Plaintiff suffered a dissociative episode

6

on August 1, 2004; whether Plaintiff conflated events from her past with the events of August 1, 2004; whether Plaintiff was truly on medications that could not be taken in conjunction with the medications that she received on August 1, 2004; whether Plaintiff actually had a "psychiatric service animal" on August 1, 2004; whether Plaintiff had a prior history of psychotic episodes; whether Plaintiff had a prior history of dissociative episodes; whether Plaintiff was ever diagnosed with a personality disorder associated with malingering; whether she was at a manic point in her bipolar cycle on August 1, 2004; whether she had any kind of debriefing with her treating psychiatrist in the days following the alleged abuse; whether there are any discrepancies between what she told her treating psychiatrist about the events and what she alleges in her Complaint; and whether she has any history of exaggerating routine medical interventions for some sort of secondary gain.

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiff's Motion for Protective Order and grant Defendant's instant Motion to Compel Production of Psychiatric Records in Accordance with Qualified Protective Order. A proposed order is attached hereto.

Respectfully submitted,

Thomas V. Monahan, Jr. (Fed. Bar #04471)
Adam Kelley (Fed. Bar #483729)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland  21202
(410) 783-4000
*Attorneys for Defendant District Hospital Partners, LP*

### POINTS AND AUTHORITIES

1.   Kalinoski v. Evans, 377 F. Supp. 2d 136, 139 (D.D.C. 2005).

2.   Health Insurance Portability and Accountability Act, 45 C.F.R. § 164.512(e) et seq.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of November 2005, copies of the foregoing Defendant's Opposition to Plaintiff's Motion for Protective Order and Motion to Compel Production of Psychiatric Records in Accordance with a Qualified Protective Order, with Exhibits, were filed electronically and sent to the following via first-class mail, postage prepaid:

Kay M. Clarke, Esquire
Clower & Clarke
601 Pennsylvania Avenue NW
The Pennsylvania, Suite 205
Washington, D.C.  20004

Matthew P. Maloney, Esquire
Gleason, Flynn, Emig & Fogelman
11 N. Washington Street, Suite 400
Rockville, Maryland 20850

_____
Adam Kelley

708704

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOAN ESNAYRA | * | |
| Plaintiff | * | |
| vs. | * | Case No.: 1:05CV01501 |
| GEORGE WASHINGTON UNIVERSITY HOSPITAL, *et al.* | * | Judge: Colleen Kollar-Kotelly<br>Deck Type: Personal Injury/ Malpractice |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

## QUALIFIED PROTECTIVE ORDER

Upon consideration of Plaintiff's Motion for Protective Order, Defendant's Opposition to Plaintiff's Motion for Protective Order and Motion to Compel Production of Psychiatric Records in Accordance with a Qualified Protective Order, any Response thereto, and any oral argument, it is this ____ day of _____, 200__,

ORDERED, that Plaintiff's Motion for Protective Order is DENIED; and it is further

ORDERED, that Defendant's Opposition to Plaintiff's Motion for Protective Order and Motion to Compel Production of Psychiatric Records in Accordance with a Qualified Protective Order is GRANTED; and it is further

ORDERED, that within ten (10) days of the date of this Order, Plaintiff's psychiatric complete records shall be produced to Defendant. Pursuant to 45 C.F.R. §§ 164.512(e)(1)(v)(A), (B), Defendant shall be prohibited from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested, and shall return to the covered entity or destroy the protected health information, including all copies made, at the end of the litigation or proceeding.

_____<br>
Judge Colleen Kollar-Kotelly<br>
U.S. District Court for the District of Columbia

cc:

Kay M. Clarke, Esquire
Clower & Clarke
601 Pennsylvania Avenue NW
The Pennsylvania, Suite 205
Washington, D.C.   20004

Matthew P. Maloney, Esquire
Gleason, Flynn, Emig & Fogelman
11 N. Washington Street, Suite 400
Rockville, Maryland 20850

Thomas V. Monahan, Jr., Esquire
Adam Kelley, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland   21202