IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOAN ESNAYRA | * | |
| Plaintiff | * | |
| vs. | * | Case No.: 1:05CV01501 |
| GEORGE WASHINGTON UNIVERSITY HOSPITAL, *et al.* | * | Judge: Colleen Kollar-Kotelly<br>Deck Type: Personal Injury/ Malpractice |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND MOTION TO COMPEL PSYCHIATRIC RECORDS IN ACCORDANCE WITH QUALIFIED PROTECTIVE ORDER

Defendant District Hospital Partners, LP t/a the George Washington University Hospital, by its attorneys, Thomas V. Monahan, Jr., Adam Kelley and Goodell, DeVries, Leech & Dann, LLP, hereby replies to Plaintiff Joan Esnayra's Response to Defendant's Opposition to Plaintiff's Motion for Protective Order, and as grounds therefor states as follows:

1. On August 1, 2004, Plaintiff presented to the George Washington University Hospital with a complaint of severe back pain.

2. Plaintiff alleges that while she was at GWUH on August 1, 2004, she was physically, verbally and chemically assaulted by persons whom she cannot name, but whom she believes to have been employees of Defendant District Hospital Partners and/or Defendant Medical Faculty Associates, Inc. See generally Complaint.

3.  Nothing in Plaintiff's medical chart from her August 1, 2004 visit to GWUH corroborates her allegations in any way. Accordingly, Plaintiff's only support for her claim is her own bald assertion that certain events occurred as alleged.

4.  Plaintiff has a long history of psychiatric problems, including bipolar disorder and Post Traumatic Stress Disorder. She has a history of depressive episodes, paranoia and nightmares.

5.  Given that there is nothing in the medical records that would support Plaintiff's allegations, this case will likely devolve into a he-said-she-said situation in which Plaintiff claims that something absolutely did happen on August 1, 2004, and Defendant claims that that same thing absolutely did not happen.

6.  Plaintiff's medical records from GWUH state that she had had traumatic flashback episodes and outbursts at GWUH prior to August 1, 2004.[1]

7.  As part of the discovery process, Defendant first subpoenaed, then moved to compel the production of, Plaintiff's psychiatric records from Plaintiff's treating psychiatrist, Dr. Richard Greenberg.

8.  Plaintiff initially sought a protection order on the grounds that the information contained in Dr. Greenberg's chart is irrelevant to this litigation and would embarrass Plaintiff.

9.  On December 5, 2005, Plaintiff filed a Response and Opposition to Defendant's Motion to Compel Production of Psychiatric Records Pursuant to Qualified Protective Order ("Response and Opposition") that largely reiterates those objections.

10. Plaintiff's arguments against the production of the requested records are wholly devoid of merit for the following reasons:

   a.  **Defendant Is Legally Entitled to the Records**

---

[1] Due to HIPAA concerns, the records from these hospitalizations have <u>not</u> been attached hereto as exhibits.

2

As noted in Defendant's initial Motion to Compel, the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.512(e) et seq., does not shield from discovery the medical records of Plaintiffs who have placed their health at issue in litigation. To the contrary, HIPAA provides that a patient's medical records, including psychiatric records, may be disclosed pursuant to subpoena "in the course of any judicial or administrative proceeding," id., as well as "in response to an Order of a Court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such Order." 45 C.F.R. § 164.512(e)(1)(i). Plaintiff has not cited any statutes or case law that would support her position that Defendant is not legally entitled to view the requested records by virtue of Plaintiff having commenced this medical malpractice lawsuit. This Court has previously recognize in dicta that when a plaintiff places her mental condition at issue in litigation, production of her psychiatric records in accordance with HIPAA is appropriate. Kalinoski v. Evans, 377 F. Supp. 2d 136, 139 (D.D.C. 2005).

    **b.**    **Plaintiff's Mental Condition Is at Issue**

Notwithstanding Plaintiff's claims to the contrary, Plaintiff's mental condition is entirely at issue in this case. Plaintiff claims, inter alia, that her civil rights were violated when Defendant did not allow her "psychiatric service dog" to accompany her into the ER. See Complaint at ¶ 30. She claims that Defendant violated the standard of care by administering medications that were contraindicated due to her use of unnamed psychiatric medications. See Motion for Protective Order. She claims that she was traumatized by the events of August 1, 2004 and that the events caused her such extreme pain and suffering that she deserves to be awarded punitive damages. See generally Complaint. All of those allegations bear directly upon her psychiatric condition

before, on, and after August 1, 2004. It is imperative that Defendant be permitted to view the requested records to evaluate the validity of Plaintiff's allegations and claimed damages.

Her mental condition is further at issue because her records from the August 1, 2004 visit to GWUH contain absolutely no statements or information that even remotely corroborates her outrageous claims. The inescapable conclusion is that the alleged events <u>did not happen</u>. Plaintiff has a long history of psychiatric problems, including bipolar disorder and Post Traumatic Stress Disorder. She has a history of depressive episodes, paranoia and nightmares.[2] Defendant absolutely has a right to explore the extent to which Plaintiff's allegations spring from her own mind, and not from the reality of the events of August 1, 2004. Defendant would be severely prejudiced if it were not given the opportunity to discover whether Plaintiff had any history of psychosis or paranoia prior to or after August 1, 2004 that could explain why her recitation of events is so different from the facts as recorded in the contemporaneous medical notes.

### c. Production of the Records Would Not Embarrass Plaintiff

In her Response and Opposition, Plaintiff once again contends that production of the records would embarrass her, while she also concedes that she has already placed large quantities of highly personal and sensitive information about her life and her psychiatric state on the internet for public viewing. Given that numerous public articles on the internet (which were attached as exhibits to Defendant's Motion to Compel) contain interviews with Plaintiff and essays written by her that openly and candidly discuss her history of rape, trauma and mental illness, Plaintiff's assertion that the requested records should be shielded from discovery because of her potential embarrassment is, at best, disingenuous. Plaintiff has voluntarily and willingly

---

[2] These issues are well-documented in Plaintiff's internet materials, described at ¶ 10(c). Due to HIPAA concerns, corroborating medical records from GWUH have <u>not</u> been attached as exhibits.

exposed the most personal and private aspects of her life on the internet, for absolutely anyone in the world to view, unrestricted, at any time.

### d. The Content of the Records Is Entirely Relevant

Clearly, Defendant's requesting of the disputed records was reasonably calculated to lead to the discovery of admissible evidence. Defendant's Motion to Compel was supported by an affidavit from Dr. Mark Komrad, a psychiatric expert, who stated that Plaintiff's psychiatric records from Dr. Greenberg were relevant to the standard of care, causation and damages aspects of this case for the following reasons, among others: whether Plaintiff suffered a psychotic episode on August 1, 2004; whether Plaintiff suffered a dissociative episode on August 1, 2004; whether Plaintiff conflated events from her past with the events of August 1, 2004; whether Plaintiff was truly on medications that could not be taken in conjunction with the medications that she received on August 1, 2004; whether Plaintiff actually had a "psychiatric service animal" on August 1, 2004; whether Plaintiff had a prior history of psychotic episodes; whether Plaintiff had a prior history of dissociative episodes; whether Plaintiff was ever diagnosed with a personality disorder associated with malingering;  whether she was at a manic point in her bipolar cycle on August 1, 2004; whether she had any kind of debriefing with her treating psychiatrist in the days following the alleged abuse; whether there are any discrepancies between what she told her treating psychiatrist about the events and what she alleges in her Complaint; and whether she has any history of exaggerating routine medical interventions for some sort of secondary gain.

### e. Dr. Greenberg's Affidavit in Support of Plaintiff's Position Is Unpersuasive

In response to Defendant's Motion to Compel and Dr. Komrad's Affidavit, Plaintiff procured from Dr. Greenberg an Affidavit stating that Plaintiff did not dissociate from reality or

suffer a psychotic episode on August 1, 2004. It goes without saying that reasonable physicians can differ in their interpretations of the same data; indeed, the nature of all medical malpractice cases is that physicians disagree as to the diagnosis and treatment of physical, emotional and mental ailments. Contrary to Plaintiff's assertion, the mere fact that Dr. Greenberg was willing to sign an Affidavit stating that, in his opinion, Plaintiff had not suffered a psychotic episode or dissociated from reality on August 1, 2004 can in no way be viewed as conclusive or authoritative.

As regards Plaintiff's assertion that the records are irrelevant, Dr. Greenberg's own Affidavit clearly states that he met with Plaintiff soon after August 1, 2004 and discussed the alleged events of August 1, 2004 with her. Accordingly, he is not just a treating physician but a witness who can testify as to what he was told by Plaintiff regarding her visit to GWUH on August 1, 2004. It is crucial that Defendant be permitted to view the requested records not only to gain information about Plaintiff's psychiatric history, but also to determine exactly what Plaintiff communicated to Dr. Greenberg in the days following the alleged event.

WHEREFORE, Defendant respectfully repeats its request that this Court deny Plaintiff's Motion for Protective Order and grant Defendant's Motion to Compel Production of Psychiatric Records in Accordance with Qualified Protective Order.

Respectfully submitted,

/s/
_____
Thomas V. Monahan, Jr. (Fed. Bar #04471)
Adam Kelley (Fed. Bar #483729)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
(410) 783-4000
*Attorneys for Defendant*
*District Hospital Partners, LP*

## POINTS AND AUTHORITIES

1. <u>Kalinoski v. Evans</u>, 377 F. Supp. 2d 136, 139 (D.D.C. 2005).

2. Health Insurance Portability and Accountability Act, 45 C.F.R. § 164.512(e) <u>et seq.</u>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of December 2005, the foregoing Defendant's Reply to Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for Protective Order and Motion to Compel Production of Psychiatric Records in Accordance with a Qualified Protective Order was electronically served on all parties of record.

/s/
Adam Kelley

714103