UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN ESNAYRA,             )<br>        Plaintiff,     )<br>    v.                )<br>                  )<br>GEORGE WASHINGTON    )<br>UNIVERSITY HOSPITAL, *et al.*,   )<br>        Defendants.    )<br>                  ) | Civil Action No. 05-1501 (CKK/AK) |

## MEMORANDUM ORDER

Pending before this Court is Plaintiff's Motion for Protective Order ("MPO") [12],

Defendant District Hospital Partners, LP's (t/a the George Washington University Hospital)

Opposition to the MPO and Motion to Compel Psychiatric Records in Accordance with Qualified

Protective Order ("GWUH Opposition") [13/14], Plaintiff's reply to the Opposition ("Plaintiff's

Reply") [15], Plaintiff's opposition to the MTC ("Plaintiff's Opposition") [18], Defendant's

reply to Plaintiff's Opposition ("Defendant's Reply") [19], Defendant's supplemental reply to

Plaintiff's Opposition ("Defendant's Supplemental Reply") [20], Plaintiff's Sur-Reply to

Defendant's Supplemental Reply ("Sur-Reply") [23]; and Plaintiff's Second Motion for

Protective Order ("Second Motion") [21], and Defendant Medical Faculty Associates, Inc.'s

opposition to the Second Motion ("MFA Opposition") [24].[1]  Distilling the avalanche of

pleadings filed by the parties, the Plaintiff is requesting a protective order prohibiting the release

of her medical records to the Defendants compiled by Richard Greenberg, MD, Plaintiff's

---

[1]Plaintiff did not file a motion for leave to file its Sur-Reply [23] but this document will
be accepted by the Court in response to GWUH's Supplemental Reply.

treating psychiatrist.  Defendants move to compel Plaintiff's psychiatric records, and suggest that

the Court enter a Qualified Protective Order in connection with such production. Plaintiff

requests a hearing in connection with the pending motions.[2]

## I. Background

Plaintiff Joan Esnayra ("Esnayra") has brought suit against Defendants, the George

Washington University Hospital ("GWUH") and Medical Faculty Associates, Inc. ("MFA"),

alleging that she suffered assault and battery upon her admission to GWUH, on August 1, 2004,

for medical treatment of back pain.  More specifically, Plaintiff alleges that she suffered damages

because she did not receive appropriate medical evaluation and treatment; she was physically

restrained against her will; and she was given medication without her knowledge and consent.

Plaintiff  Esnayra also alleges that the five unnamed individual defendants who participated in

the assault and battery were negligently hired and supervised by the two corporate defendants.

Plaintiff demands both compensatory and punitive damages.  Discovery in this matter concludes

on July 31, 2006.[3]

Plaintiff moves for a Protective Order to prevent the Defendants from subpoenaing

medical records from Dr. Richard Davis Greenberg, Plaintiff's psychiatrist who treats her bi-

polar condition.[4]

---

[2]Upon review of the motions and the documents in support and opposition thereto, the Court determines that these motions can be resolved without benefit of a hearing because they have been fully briefed by Plaintiff and both Defendants.

[3]The Court has been informed that this dispute regarding production of Plaintiff's psychiatric records has effectively halted discovery.

[4]Plaintiff's MPO and Second Motion are identical insofar as the issues addressed therein, but they are directed to different co-Defendants, who subpoenaed the same psychiatric records.

## II. Legal Standard

In general, a party is entitled to discover information that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A party may discover information that is not privileged and "is relevant to the claim or defense of any party." *Id.* For purposes of discovery, relevance is broadly construed. *See, e.g., Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp. 2d 83, 86 (D.D.C. 2005) (citations omitted).

Courts have broad discretion to enter orders limiting and managing discovery. *See, e.g., McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004); *Doe v. District of Columbia*, 230 F.R.D. 47, 50 (D.D.C. 2005). Under Fed. R. Civ. P. 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985).

A party may move for a protective order, pursuant to Fed. R. Civ. P. 26©) "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] that the disclosure or discovery not be had; [or] that the disclosure or discovery may be had only on specified terms and conditions . . . . " The movant must establish "good cause" under Rule 26©) "by demonstrating the specific evidence of the harm that would result." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001). The movant carries the burden of establishing that a protective order should be granted. *Fonville v. District of Columbia*, 239 F.R.D. 38, 40 (D.D.C. 2005). The Court employs a balancing test in determining whether to

grant a motion for protective order, weighing the burdensomeness to the moving party against the requestor's need for, and relevance of the information sought. *Jennings*, 201 F.R.D. at 275 (citing *Lohrenz v. Donnelly*, 187 F.R.D. 1,3 (D.D.C. 1999); *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998)).

III. Legal Analysis

The grounds for Plaintiff's motions for protective order are twofold: 1) the information is "completely irrelevant to this case;" and 2) the "release of this information to anyone outside of the doctor-patient relationship . . . will cause unnecessary embarrassment to the plaintiff and will provide no support for the administration of chemical restraints to the plaintiff on August 1, 2004."  MPO at 2-3.  In support of both contentions, Plaintiff filed an Affidavit by Richard Greenberg ("Dr. Greenberg") stating that "[m]y records of treatment of Ms. Esnayra have no bearing upon what occurred on August 1, 2004, and contain highly sensitive and personal information which is irrelevant to the incident of August 1, 2004."  Dr. Greenberg Affidavit at ¶7.

As a preliminary matter, Defendant GWUH contends that it is entitled to review Plaintiff's psychiatric records pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R.§164,512(e) *et seq.*, which provides that a patient's medical records, including psychiatric records, may be disclosed pursuant to subpoena "in the course of any judicial or administrative proceeding," *id.*, as well as "in response to an Order of a Court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such Order."  45 C.F.R. §164.512(e)(1)(I).   45 C.F.R.

-4-

§164.512(e)(i)(iv)(D) provides that a covered entity may disclose protected health information in response to a subpoena, discovery request or other lawful process that is not accompanied by an Order of the Court if the parties seeking the information have a Qualified Protective Order. GWUH Opposition at 2, citing the HIPAA regulations. Defendants here propose entry of a Qualified Protective Order prohibiting the use of the psychiatric records for any purpose other than in connection with this litigation. Plaintiff does not address the issue of Defendants' compliance with the applicable HIPAA regulations.

Privacy Concerns

Taking the Plaintiff's objections to production in reverse order, GWUH addresses Plaintiff's allegations of "unnecessary embarrassment" by noting that there are publicly-available candid articles about Plaintiff and her psychiatric history, some of which were authored by the Plaintiff herself. *See* GWUH Opposition, Exhibits 2, 3, and 4 (articles about Plaintiff and her mental heath issues.)[5] More significantly however, a Qualified Protective Order expressly prohibits the Defendants or the attorneys from using or disclosing the medical information provided for any purpose other than this litigation, thus allaying Plaintiff's privacy concerns. If, as Plaintiff and Dr. Greenberg suggest, the Plaintiff's psychiatric records are not relevant to the issues of the case, the Plaintiff will successfully object to their admissibility, thereby limiting further their disclosure.

---

[5]In these articles, Plaintiff describes her psychiatric conditions at times affecting her ability to process information, causing her to act strangely and at times experience extreme paranoia. *Id.* at Exhibit 2. According to GWUH, Plaintiff's medical records corroborate this, indicating that she "had traumatic flashback episodes and outbursts at GWU prior to August 1, 2004." Defendant's Reply at 2.

<u>Relevance of Psychiatric Records</u>

Plaintiff asserts that because she seeks only a "garden variety" claim for emotional damage, linked to the allegations of assault and battery and violation of civil rights, then Dr. Greenberg's records are irrelevant. Plaintiff's Opposition at 3. Defendant GWUH cites dicta from *Kalinoski v. Evans*, 377 F. Supp.2d 136 (D.D.C. 2005), for the proposition that "when a plaintiff places her medical condition at issue in litigation, production of her psychiatric records in accordance with HIPAA is appropriate." GWUH Opposition at 3.[6] In *Kalinoski*, the plaintiff claimed that defendant's actions caused her severe emotional distress and the court ruled that "the psychotherapist privilege is waived when a plaintiff places [his] mental state at issue." *Id.* at 137-38.[7]

A case more factually on-point with the instant case is *Fox v. Gates Corporation*, 179 F.R.D. 303, 305-06 (D. Colo. 1998) (discussing whether psychotherapy records are discoverable). In *Fox*, the plaintiff did not assert a separate cause of action for infliction of emotional distress and did not allege a specific mental or psychiatric injury or disorder, nor did she claim unusually severe emotional distress; instead, she made a "garden variety" claim for emotional distress damages. The *Fox* court held that:

> [A]ssuming that plaintiff's communications with her psychotherapist occurred during the applicable time period, defendant is entitled to discovery of plaintiff's psychotherapy records. Defendant is also entitled to discovery of plaintiff's other medical records

---

[6]Defendant MFA cites two cases in support of the general proposition that a patient who places her physical condition at issue by filing a lawsuit waives the privilege against disclosing medical evidence. MFA Opposition at 4. Because neither case is factually on point with the instant case, the Court declines to discuss them. Plaintiff cites no case law.

[7]The Court notes that Plaintiff does not make a separate claim for infliction of emotional distress in her Complaint.

generated during the applicable time period as the information contained in those records is not privileged and is relevant to whether the emotional distress which plaintiff claims to have suffered as a result of defendant's conduct can be attributed in whole, or in part, to some other stressor in her life.

179 F.R.D. at 306.

Defendant GWUH next proffers its argument as to why Plaintiff's psychiatric condition before, on and after August 1, 2004 is relevant, thus necessitating a review of the psychiatric records. GWUH Opposition at 3. First, GWUH contends that the medical records from the Plaintiff's August 1, 2004 visit to GWUH contain no support for Plaintiff's allegations and accordingly, it is conceivable that there is a medical explanation that would explain Plaintiff's recollection of what happened on August 1, 2004.[8] Second, GWUH asserts that it is "entitled to know exactly what Plaintiff told Dr. Greenberg - and any other health care provider - about the events of August 1, 2004. *Id.* at 4. Third, Plaintiff's allegations in her Complaint and her MPO necessitate access to her medical records because they bear upon her psychiatric condition. For example, Plaintiff claims a violation of her civil rights resulting from not being allowed to bring

---

[8]Defendant GWUH asserts that it needs the psychiatric records "to discover whether Plaintiff had any history of psychosis or paranoia prior to or after August 1, 2004 that could explain why her recitation of events is so different from the facts as recorded in the contemporaneous medical notes." GWUH Opposition at 4. *See also* GWUH Opposition, Exhibit 5 (Affidavit of Mark Komrad ("Dr. Komrad"), GWUH's expert) (hypothesizing about the disparity in explanations as to what happened on August 1, 2004, and suggesting that either there has been a "highly coordinated conspiracy by Defendants to 'cover up' the events of August 1, 2004," or Plaintiff had a psychotic or dissociative episode that day," or Plaintiff is "malingering in the hopes of financial or other gain." Dr. Komrad Affidavit at ¶2. In response to Dr. Komrad's Affidavit, Dr. Greenberg proffers that "[t]he release of my records of treatment will not provide Dr. Komrad or any other psychiatrist with any evidence that Ms. Esnayra has ever suffered from a psychotic or dissociative episode at any time." *See* Dr. Greenberg Affidavit at ¶4.

her "psychiatric service dog" into the emergency room.  She also claims that Defendants administered medications that were contraindicated due to her use of certain unnamed psychiatric medications.  Furthermore, she claims entitlement to punitive damages for her extreme pain and suffering.  *See* GWUH Opposition at 4.  Defendant MFA joins in these arguments by GWUH and further asserts that because Plaintiff claims damages for emotional distress, MFA needs access to Plaintiff's medical records to "determine plaintiff's emotional state in 2005 and before and to evaluate the nature, extent and cause of the emotional damages for which the plaintiff seeks to hold defendants responsible here."  MFA Opposition at 6.[9]

GWUH further argues that "[b]ecause Plaintiff's treating psychiatrist, Dr. Greenberg, and treating psychologist, Dr. Fisher, are to be called as experts in this case, it is imperative that Defendant be permitted to review their records relating to Plaintiff," in order to avoid prejudice.[10]  Defendant's Supplemental Reply at 2.  Plaintiff counters that the information sought by Defendants is irrelevant because Plaintiff's treating psychiatrist, Dr. Greenberg, has already stated that "there is nothing in his records to assist the defense in proving that plaintiff did suffer a psychotic or disassociate episode on August 1, 2004 . . . ."  Plaintiff's Sur-Reply at 1.  Plaintiff appears to argue that Defendants should adopt, without question, Dr. Greenberg's conclusion, without the benefit of reviewing the Plaintiff's psychiatric records.

---

[9]MFA notes that Plaintiff's response to an Interrogatory asking about "each symptom, disability, or abnormal physical or mental condition which [she] claim[s][was] caused by the alleged negligence of any and all defendants," Plaintiff indicated that, in 2005, she "became hysterical and could not stop crying" while awaiting treatment at a local emergency room.  MFA Opposition, Exhibit 2 (Plaintiff's Answers to Interrogatories).

[10]Defendant indicates that it intends to subpoena Dr. Fisher's records "in the near future."  Defendant's Supplemental Reply at 2.

Plaintiff's assertions are neither factually nor legally persuasive, particularly in light of the fact that Dr. Greenberg will be proffered as an expert to testify "based upon his education, experience and <u>knowledge of the [P]laintiff</u> that [she] did not suffer from any dissociation or other psychiatric incident on August 1, 2004 . . . ."  Defendant's Supplemental Reply at 1, quoting from Plaintiff's Answer to Interrogatory No. 12 (emphasis in original).  The Court finds that even if Dr. Greenberg is proffered to testify "to a very specific fact/conclusion," Plaintiff's Sur-Reply at 1, such conclusion is admittedly based on his knowledge of the Plaintiff, derived from his relationship as her treating psychiatrist, both before and after the alleged August 1, 2004 incident.  Defendants are certainly entitled to access information relating to this relationship in their efforts to challenge Dr. Greenberg's factual and medical grounds for his opinion and to ascertain his knowledge about the August 1, 2004 incident.  *See Lanning v. Southeastern Penn. Trans. Auth.*, 1997 WL 597905 at *2 (E.D. Pa. 1997) (citation omitted), wherein the court found that:

> We are not persuaded, however, that waiver of the privilege should be made to turn on the nature of the plaintiff's evidence rather than on the nature of her claim.  Implied waivers of privilege are justified by the interests of the state in seeing that truth is ascertained in legal proceedings and fairness to the adversary . . . If a plaintiff seeks damages for alleged emotional or psychological injuries, the defendant's case ought not be limited by the plaintiff's decision not to introduce available medical or psychological testimony that bears directly on the truth of the claim.

Moreover, Dr. Greenberg's determination that his records are not relevant is not binding on the Court; to the contrary, the trial court will rule on whether his records are relevant and admissible.

Plaintiff suggests that it is inappropriate for "Defendants [to] seek[] information to support their apparent defense that, in the event plaintiff was restrained at the hospital, restraints were applied because she suffered a psychotic episode."  Plaintiff's Opposition at 3.  Plaintiff

misperceives the very purpose of Rule 26 (b)(1); this type of information is discoverable because it may impact Plaintiff's assertion of liability and is thereby relevant to Plaintiff's claims and/or Defendants' defenses.  By putting her medical and mental condition at issue, she waives the physician/patient privilege in this case.  Defendant deserves the opportunity to explore in detail Plaintiff's claims about what happened at GWUH on August 1, 2004.

## IV. Conclusion

_____Plaintiff moves for a Protective Order barring all access to Plaintiff's psychiatric records with Dr. Greenberg, on grounds that "none are relevant."  Plaintiff's Opposition at 2.[11]   Plaintiff, the movant, fails to meet her burden of establishing "good cause" for the exclusion of Plaintiff's psychiatric records by demonstrating specific evidence of harm that would result it these records are released subject to a Qualified Protective Order.  Plaintiff has already highly publicized her mental health history and accordingly, the Court finds unpersuasive Plaintiff's allegations that she will be subjected to unnecessary embarrassment.  Furthermore,  Plaintiff's psychiatric records are clearly relevant because they are implicated in both Plaintiff's claims [such as her allegation that she was given contraindicated medication and her assertion that she became hysterical when awaiting emergency room treatment in 2005] and Defendants' defenses.

The admissibility of any information contained in Plaintiff's psychiatric records is not a

---

[11]Plaintiff notes that if the Court grants access to Plaintiff's records with Dr. Greenberg, "[P]laintiff would contend that not all records should be released but that the records should be carefully reviewed to determine which are in any manner relevant to this case."  Plaintiff's Opposition at 2.

question before this Court; rather, it is a matter reserved for the trial court.  Accordingly, it is this 17th day of February, 2006,

      **ORDERED** that Plaintiff's Motion for Protective Order [12] is **denied**, and it is further,

      **ORDERED** that Defendant George Washington University Hospital's Motion to Compel Psychiatric Records in Accordance with Qualified Protective Order [13/14] is **granted**, and it is further,

      **ORDERED** that Plaintiff's Second Motion for Protective Order [21] is **denied**.  Within 15 days from the date of this Memorandum Order, Plaintiff will make available to Defendants a copy of Plaintiff's psychiatric records, relating to her treatment by Dr. Greenberg from the time treatment commenced to the present time.  Pursuant to 45 C.F.R. §§ 164.512(e)(1)(v)(A)(B), Defendants shall be prohibited from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested, and shall return to the covered entity or destroy the protected health information, including all copies made, at the end of the litigation or proceeding.

                                _____

                                ALAN KAY
                                UNITED STATES MAGISTRATE JUDGE