**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOAN ESNAYRA | * | |
| Plaintiff | * | |
| vs. | * | Case No.: 1:05CV01501 |
| GEORGE WASHINGTON UNIVERSITY HOSPITAL, *et al.* | * | Judge: Colleen Kollar-Kotelly<br>Deck Type: Personal Injury/ Malpractice |
| | * | |
| Defendants | * | |

* * * * * * * * * * *

**DISTRICT HOSPITAL PARTNERS, L.P.'S RULE 26(a)(2) DISCLOSURE OF EXPERT OPINION REGARDING PAULA BRUENING, M.S.N.**

Paula Bruening, M.S.N.
8745 Baltimore Street
Savage, Maryland 20763

## QUALIFICATIONS

I am an expert in the field of nursing, with particular expertise in issues relating to the provision of nursing care in the emergency room environment. I am currently employed as the Vice President of Nursing/Patient Care Services at Doctors Community Hospital in Lanham, Maryland. I have attached to this Disclosure Statement a copy of my Curriculum Vitae identifying in greater detail my areas of expertise, experience and qualifications.

## DOCUMENTS REVIEWED

I have reviewed Joan Esnayra's pertinent medical records and the pertinent pleadings filed in this case. I intend to review the written transcripts and videotaped recordings from all depositions taken in this case in the future.

## EXHIBITS

I may refer to specific medical and/or psychiatric records, therapy records, diagnostic films, pathology slides, medical literature, medical illustrations, employment records, internet publications, deposition transcripts, videotaped depositions, or other items to support or explain my opinions. I may also write or draw on an art pad to support, illustrate or explain my opinions.

**OPINIONS**

I reserve the right to supplement my opinions once I have had the opportunity to review the depositions of the parties and the fact and expert witnesses in this case, as well as any other medical records or other review materials that may be produced in the future. I base the following opinions on my review of the medical and other records that have been provided to me for review. It is my understanding that no depositions have been taken as of the date of this report. All of my opinions are expressed to a reasonable degree of nursing probability.

It is my opinion that the nurses and other non-physician staff at George Washington University Hospital fully complied with the applicable standards of care when Joan Esnayra presented to the emergency room on August 1, 2004. The treatment rendered to her was entirely appropriate and therapeutically effective. In addition, it is my opinion that nothing that happened or did not happen during Joan Esnayra's visit to the emergency room on August 1, 2004 caused any injury to her.

It is clear from the medical records that Ms. Esnayra presented to the emergency room in extreme physical pain. Under those circumstances, she was unable to sign the consent forms that were presented to her. It was appropriate to treat her in spite of her claimed inability to sign the consent forms, particularly since she had arrived via ambulance and presented her insurance cards prior to treatment, which indicates a desire to be treated. All of the medications that were given to Ms. Esnayra during her visit to the emergency room were appropriate for patients complaining of back pain, were not contraindicated in Ms. Esnayra's case, and were neither the type of medications nor of the requisite dosage to constitute a form of chemical restraint. The medications could not have been administered to Ms. Esnayra without her knowledge, as the records state that Ms. Esnayra denied being allergic to the medications. Also, at least one of the medications at issue was administered orally without argument or protest, which further evidences Ms. Esnayra's willingness to take it.

It is clear from the medical records that Ms. Esnayra was neither abandoned nor abused during her visit to the emergency room, nor was her treatment in any way delayed. The medical records document that Ms. Esnayra was seen by multiple nurses and physicians during her brief visit, including a specialist in neurosurgery. There is absolutely nothing in the records that supports Ms. Esnayra's allegations of abuse. There is nothing to support her allegations of physical restraint. The medical records indicate that Ms. Esnayra's companion was permitted to be with her in the emergency room, notwithstanding her allegations to the contrary.

With respect to Ms. Esnayra's claims that her civil rights (under the Americans with Disabilities Act) were violated by the Defendants' alleged refusal to allow her "service animal" to accompany her into the emergency room, I find no basis whatsoever for this allegation in the medical records. Moreover, in all my years of nursing, I have never heard of a "psychiatric service dog," much less been presented with a request to permit one into an emergency room. Regardless, in my opinion, permitting emergency room access to any type of service dogs must be determined on a case-by-case basis, as there are numerous variables that must be taken into account. Service dogs are <u>not</u> always allowed into emergency rooms.

Clearly, the presence of certain types of dogs in the emergency room could be extremely disruptive to the emergency room as a whole and could compromise the staff's ability to render effective treatment to the patients. Emergency rooms generally are crowded areas comprising infants, toddlers, the elderly, and patients with open wounds, psychiatric issues, and cardiac problems. These patients are ambulatory, on stretchers, on crutches and canes, and in wheelchairs. They are often attached to IVs and are connected to various machines by tubes and wires. Having a dog in the emergency room, whether on or off a leash, would compromise the hygiene and order of the emergency room and would quite likely cause anxiety to many patients and compromise their safety, particularly when the dog is a very large Rhodesian Ridgeback, as Ms. Esnayra's dog apparently was.

**BASIS AND REASONS FOR OPINIONS**

I base my opinions on my review of Ms. Esnayra's medical records and the pertinent pleadings filed in this case. I also base my opinions on my education, training, and experience in this area, as reflected in my Curriculum Vitae attached hereto. I also intend to review depositions related to this case as they become available and may base my opinions on portions of those depositions, as well as on any additional medical records or other materials that are produced to me in the future.

**PUBLICATIONS AUTHORED IN THE PRECEDING TEN YEARS**

Any responsive publications would be listed in my Curriculum Vitae, attached hereto.

**COMPENSATION RATES**

My fee for consultation is $150.00 per hour. My fee for deposition testimony is $200.00 per hour. My fee for Court appearance is $200.00 per hour per day plus travel expenses.

**CASES IN WHICH I HAVE GIVEN EXPERT TESTIMONY IN THE PRECEDING FOUR YEARS**

Morin Bennett v. MGH 10/16/2002 Case No. 200758

Paula L. Bruening

Paula Bruening, M.S.N.

April 26, 2006

Date

756402

Respectfully submitted,

Thomas V. Monahan, Jr. (Fed. Bar #04471)
Adam Kelley (Fed. Bar #483729)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
(410) 783-4000
*Attorneys for District Hospital Partners, L.P. d/b/a George Washington University Hospital*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of April 2006, copies of District Hospital Partners, L.P.'s Rule 26(a)(2) Disclosure of Expert Opinion Regarding Paula Bruening, with Attachment, were sent to the following via first-class mail, postage prepaid:

Kay M. Clarke, Esquire
Clower & Clarke
601 Pennsylvania Avenue NW
The Pennsylvania, Suite 205
Washington, D.C. 20004

Matthew P. Maloney, Esquire
Gleason, Flynn, Emig & Fogelman
11 N. Washington Street, Suite 400
Rockville, Maryland 20850

Adam Kelley

756402

*Paula Louise Bruening, M.S.N.*
8745 Baltimore Street
Savage, Maryland 20763
Home: (301) 317-7999
Work: (301) 552-8104

EXPERIENCE:

Doctors Community Hospital (DCH), Lanham, MD -- 1990 - Present

Vice President, Nursing/Patient Care Services

Responsible for the administration of a 250 bed acute care facility to include: Nursing Inpatient, Emergency Services, Home Health, Renal Dialysis, Department of Education, Physical Therapy, Respiratory Therapy, and Subacute Care. Maintain compliance with regulating agencies. Facilitation of a $20 million budget preparation and administration.

Major Accomplishments:

- Restructured organization to consolidate units and decrease costs.
- Expanded Weekend Plan to other clinical departments.
- Implemented Case Management at DCH.
- Clustering of Renal and Chemotherapy patients to facilitate patient outcomes.
- Implemented Workload Management Program to facilitate staff/scheduling.
- Implemented Skin Care Specialist/Program.
- Implemented Blood Glucose Monitoring by Nursing with quarterly Certification.
- In collaboration with Anesthesia, implemented a PCA Program.
- Re-established alliances with five Schools of Nursing.
- Began implementation of TQI within Nursing Services 91/92.
- Implemented an Occupational Health Program 1991.
- Assisted with the design and implementation of a competitive Salary & Wage Program.
- Implemented an In-House Agency Pool for Registered Nurses.
- Instrumental in the selection of an HIS which supported patient care.
- Implemented a Nurse Extern Program January 1996.
- Reengineered Patient Care Delivery Model 1996.
- Coordinated opening of a 17-bed Subacute Unit July 1996.
- Implemented an Organizational Wide Management Development Program
- Implemented CPEC, Observation and Fast Lane
- Relocated and expanded Telemetry Unit 1995.
- Implemented hand held computer technology in Home Care 1995.

Kent General Hospital, Dover, Delaware – 1989-1990

Vice President for Nursing Services

Responsible for overall administration of a 210 bed acute care facility, to include Nursing Inpatient, Outpatient and Dialysis services. Maintain compliance with all regulatory agencies. Facilitate proper budget preparation and administration. Ensured development of nursing management.

Major Accomplishments:

- Restructuring Department of Nursing to consolidate units and provide continuity.
- Initiated Nurse Manager development process to include: fiscal management, human resources management and team building.
- Implemented Adolescent Psychiatry Program and Level II Nursery.
- Revised Nursing Quality Assurance Program.
- Developed networking program with affiliated Nursing Programs.
- Coordinated the Nursing component for interim OB services during the Dover Air Force Base Asbestos removal project.
- Assisted with review and selection of Hospital-wide information system.
- Converted Nursing Policies and Procedures to the Marker Model.

Loudoun Health Care, Inc./Loudoun Memorial Hospital, Leesburg, VA – 1984-1989

Vice President for Consumer Services, (1987-1989)

Responsible for an integrated network of health care services; developed and maintained a corporate-wide quality assurance program; and supervised a corporate health education program.

Major Accomplishments:

- Co-authored Corporate Quality Assurance/Risk Management Program.
- Implemented Corporate Quality Assurance Department and Program.
- Assisted with the development of the Corporate Health Education Business Plan.

Vice President of Patient Services, (1984-1989)

Responsible for overall administration of a 118-bed acute care facility, to include Nursing Inpatient, Outpatient and Ambulatory surgery, Pharmacy and Hospitality services. Ensured the delivery of efficient and effective quality nursing, pharmaceutical and hospitality services. Maintained compliance with all regulatory agencies. Facilitated proper budget preparation and administration.

Major Accomplishments:

- Initiated a workload management system.
- Initiated the review, revision and establishment of criteria-based job descriptions and performance standards.
- Facilitated the implementation of a Pharmacy inventory control system.
- Implemented a certification bonus program.
- Reorganized the Nursing Division to promote decentralization.
- Assisted with a home care feasibility study.
- Assisted with the review and subsequent recommendations for a health information system.
- Initiated a unit-based Quality Assurance Program.
- Initiated creative policies and programs for dealing with staffing shortages.
- Promoted a philosophy of continuing education throughout the Division of Nursing.
- Implemented LDR/P concept for obstetrical care.
- Implemented short stay unit.

<u>Moore Regional Hospital, Pinehurst, NC – 1973-1984</u>

Administrative Nursing Supervisor, (1982-1984)

Responsible for assuring adequate staffing levels and served as a clinical resource for nursing personnel. Member of the disaster, Professional Practice, Career Ladder, Cost Containment and Quality Assurance Committees. Acted as Nursing Administrator in their absence.

Acting Head Nurse/Emergency Department, (1982)

Responsible for managing a 16-bed Emergency Department for a regional referral center to include an eight-bed outpatient area.

Staff Nurse, (1973-1981)

Moore Regional Hospital, Pinehurst, North Carolina; Sierra Vista Community Hospital, Sierra Vista, Arizona; Washington County Hospital, Hagerstown, Maryland.

Responsible for the assessment, planning, implementation and evaluation of nursing care for a module of patients. Charge Nurse duties.

Professional Organizations/Appointments:

- Certified Nurse Administrator
- American Organization of Nurse Executives
- Maryland Organization of Nurse Executives
- Home Health Advisory Board
- Clinical Lecturer, George Mason University
- Sigma Theta Tau, National Honor Society for Nursing
- Phi Betta Kappa Honor Society
- VHA Taskforce on Nurse Recruitment and Retention, (1987-1988)
- Deans/DONS Taskforce, (1991-1992)

Community Involvement:

- Explorer Scouts, Waterford Foundation and Various Hospital fundraising activities
- Prince George's County Literary Council Board Member, Vice President, 1994-1996
- American Heart Association Board Member

Licensure:

- Maryland

EDUCATION:

| | |
|---|---|
| Post Masters Certificate -- Nursing Administration<br>Villa Nova University | 1992 |
| M.S., Nursing Administration<br>University of North Carolina, Greensboro, NC | 1984 |
| B.S., Nursing<br>University of North Carolina, Chapel Hill, NC | 1982 |
| Associate Degree, Nursing<br>Hagerstown Junior College, Hagerstown, MD | 1973 |

References Available Upon Request

250.93WP51